## LACHES IN PAYING TAXES ON ANOTHER MAN'S LAND.

Common Pleas Court of Cuyahoga County.

JOHN CHRIST AND ARNOLD STEVERDING, EXECUTORS, V. WILLIAM F. EIRICH ET AL, COMMISSIONERS OF CUYAHOGA COUNTY, OHIO.

Decided, September 28, 1912.

*Taxation—Land Wrongfully Returned as Delinquent—Construction of the Provision for Return of Money to Purchaser at Tax Sale— Laches in Payment of Taxes Wrongfully Charged—Both Chance and Peril Involved in Purchases at Tax Sales—Errors Fundamental and Clerical in Tax Duplicate—Sections 2908, 2781 and 2782, R. S., and 2588 and 2590, G. C.*

1. The provision of Section 2908, R. S., as that statute read in the year 1885, that where land is erroneously returned as delinquent and is sold for taxes, the sale shall be void "and the money paid by the purchaser at such tax sale shall be returned to him," authorized the refunding only of the money paid for the certificate of purchase at the time of the delinquent sale, and did not authorize the refunding of taxes which became due and were paid by the purchaser subsequent to the delinquent sale.

2. Where an error in apportioning taxes is due to the neglect of a legal duty, it is deprived of the character of a mistake in the legal sense, and does not fall into the class which are characterized as clerical errors.

3. Inasmuch as the mistake which forms the basis of the present suit was due to the negligence of the auditor in placing in plaintiff's name on the tax duplicate land which did not belong to him, and upon which plaintiff paid taxes for a long period, it must be treated as a fundamental rather than a clerical error, and an order for the issuance of a refunder for taxes so wrongfully charged, and which the plaintiff paid, can not be granted.

*H. G. Schaibly*, for plaintiffs.
*Wm. E. Minshall*, contra.

FORAN, J.

On appeal from the decision by county commissioners.

In 1874 one Louis Harms was the owner of two lots located on the northerly side of St. Clair street in the city of Cleveland,

Ohio. These lots were each fifty feet wide and two hundred feet deep, running northerly from the north line of St. Clair street. At that time said St. Clair street was sixty feet wide. In 1874 the city, by ordinance, provided that the width of said St. Clair street should be increased to ninety-nine feet, and to that end appropriated approximately thirty-four feet off the lots abutting on the northerly side of the street, leaving the Harms lots but one hundred and sixty-six feet deep. Subsequently during the same year 1874, Harms sold from the extreme northerly end of these lots thirty feet of land, leaving the land still owned by him one hundred and thirty-six feet deep from the new line of St. Clair street, or one hundred and seventy feet deep, measured from the old or original line of said St. Clair street. In 1875 Harms sold these lots, then only one hundred and thirty-six feet deep. The deeds were duly presented to the recorder of the county for transfer. The deeds or descriptions of the lands as recited in the deeds, are not before the court, but it is quite probable the lands were sold by lot number, or, if described by metes and bounds, St. Clair street was indicated as the southerly boundary of the lots.

The recorder, in transferring these conveyances, took the old or original line of St. Clair street as the southerly boundary of the lots instead of the new line as widened by the city in 1874. This left a parcel of land one hundred feet wide and thirty-four feet deep at the northerly end of the lots apparently still in the name of Harms. As a matter of fact this parcel of land was owned by the parties to whom Harms had made these conveyances in 1875.

The taxes on this parcel of land, the land being still apparently listed for taxation in the name of Harms, became delinquent, and the same was told at delinquent tax sale in January, 1883, to one Kelly, who paid the taxes then appearing due thereon as of record in the auditor's office, and received from the auditor the usual certificate of purchase, which certificate Kelly assigned, about a month later, to one Hill. In December, 1883, the auditor discovered that an error had been made, and refunded to Hill the money paid for the certificate of purchase at said tax sale.

The auditor then, as appears by the agreed statement of facts upon which this case is submitted, made an entry "on the tax sale records of his office, on the same lines where said tax sales are recorded," in the following words: "Double entry; money refunded Dec. 5th, 1883." The auditor, however, did not take this parcel of land from the tax duplicate, but the same was still carried in and remained listed in the name of the said Hill.

In January, 1885, the taxes on this parcel of land again appeared delinquent, and it was again sold at delinquent tax sale to Valentine Christ, who paid the taxes appearing due thereon and received from the auditor the usual certificate of purchase. Christ continued to pay taxes assessed against the land until June, 1889, when he surrendered his certificate of purchase and received from the auditor a tax deed or deeds to the land, and paid the taxes thereon until and including the year 1908, the amount so paid being $257.93.

Valentine Christ died May 17th, 1910, and the plaintiffs in this proceeding are his duly appointed and qualified executors. On March 11, 1911, they presented to the defendants, as county commissioners, a claim for said $257.93, so paid by the said Valentine Christ, and asked that the same be allowed. This claim the defendants allowed for the amount originally paid and the taxes for the years 1904, 1905, 1906, 1907 and 1908, being for five years including the year 1908, the last year Christ paid taxes on the land, the amount so allowed being $62.25. The balance, $195.68, was disallowed.

From this allowance or decision of the county commisioners an appeal is filed in this court, by virtue of Section 2461, General Code, which provides that if a person is aggrieved by the decision of the county commissioners in any case, such person may, within fifteen days thereafter, appeal to the next court of common pleas.

Counsel for the defendants claim that under the facts in this case the appeal does not lie, for the reason that "the right of appeal is limited to matters in which the commissioners are vested with judicial function." It is true that where the duty is purely ministerial and in no way involves judicial discretion, the

remedy, if there be one, is by mandamus, and the court of common pleas would have no jurisdiction by appeal in such case (*Commissioners* v. *Hune*, 33 O. S., 176). A judicial act is an act done by a member of the judicial department of government, in construing the law, or applying it to a particular state of facts presented for a determination of the rights of the parties thereunder (*Smith* v. *Strather*, 68 Cal., —; 8 Pac. Rep., 852). In a ministerial act there is no dependence on the exercise of judgment as to the propriety of doing the act, while a judicial act involves the exercise of judgment and discretion. We think there can be no doubt but that the commissioners were called upon, in determining whether this claim should be allowed or disallowed, to exercise both judgment and discretion; and for the consequences of their decision, whether well or ill judged, they are not collectively or personally liable; and therefore their action was not purely ministerial, and was *quasi* judicial.

Counsel for appellants claims the right to recover the amount originally paid for the certificate of purchase, received by Christ at the time, January, 1885, of the tax sale and all taxes thereafter paid by him, under and by virtue of Section 2908, Revised Statutes. This section, as it read during all of these transactions, provided that if the taxes charged on any land are regularly paid and the land is erroneously returned delinquent and sold for taxes, the sale shall be void, "and the money paid by the purchaser *at such tax sale* shall be refunded to him." Evidently this section of the statute, before the act of revision of February 14, 1910, provided only for refunding money paid for the certificate of purchase, that is, the money paid at the time of the delinquent tax sale. No other construction can be placed upon this statute as it read during the time these transactions took place. The amount so paid, $6.12, was allowed by the commissioners, as appears by the appeal or petition of plaintiffs. This allowance will not be disturbed, although, in view of the lapse of time (some twenty-three years), intervening between payment and demand for refunder, it is questionable whether it should be allowed; but as no complaint is made by counsel for defendants in that respect, it will stand.

Secondly, counsel for the plaintiffs insist that the whole amount of the tax paid by Christ, including the amount paid for the certificate of purchase, should be refunded and that authority for so doing is conferred upon the county commissioners by Sections 2588, 2589 and 2590, General Code.

Section 2588, General Code, provides that the auditor, from time to time, shall correct all errors which he discovers in the tax list and duplicate, first in the name of the persons charged with the tax or assessment; second, in the description of the land or property; third, when property exempt from taxation has been charged with taxes; fourth, in the amount of taxes or assessment charged. This section as amended January 16th, 1873 (70 O. L., 10 and 11), provided that the auditor should correct all errors which he discovers "in the tax list and duplicate, either in the name of the person charged with the tax or assessment, the description of the land or other property, or in the amount of such taxes or assessments." It will be noticed that the words "or when property exempt from taxation has been charged with taxes," did not appear in the statute at that time. This statute, as it then stood, was construed by our Supreme Court in *State of Ohio, ex rel,* v. *Commissioners,* 31 O. S., 271. In that case it appears that for five years prior to the beginning of the action taxes were annually levied and collected on certain real property, situated in Montgomery county, which, as a pure public charity, was not subject to taxation under the law of this state. Application was afterwards made to the county auditor to draw his warrant upon the county treasurer in favor of the relator for the amount of taxes so paid. The auditor refused to comply with the request, and a writ of mandamus was prayed for, commanding the auditor to issue a warrant to the treasurer for the amount so paid. The Supreme Court held that "the errors named in the statute are clerical merely, but the error complained of by the relator is fundamental. The question, whether specific property is or is not subject to taxation, was not, by this section of the statute, submitted to the judgment of either the auditor of the county or the board of county commissioners," and the writ was therefore refused.

This holding by our Supreme Court resulted in an amendment to the statute by the Legislature, by which amendment the words ''or when property, exempt from taxation, has been charged with taxes'' were included. In this case the auditor placed upon the tax duplicate or listed for taxation property which, under the law, was exempt from taxation; and, as will be seen, it was held that this was not one of the errors named in the statute, but that it was a fundamental error. In other words, a mistake occurring in an original or primary act is not clerical but fundamental (22 W. L. B., 294). That is, the statute was intended to empower the auditor to correct mere clerical errors, but did not give him power to correct a mistake made as an original or primary act.

In *Sandhegger* v. *Commissioners*, 9 W. L. B., 20, it was held that where a new building was erected on land to replace an old building which was torn down, and the value of the new building was added to the valuation, no deduction being made for the old building, that the county commissioners were not authorized under this statute to refund the tax which had been paid for several years on the excessive valuation. To state the case more clearly, the valuation of the land or premises before the erection of the new building included, of course, the valuation of the old building, and when the new building was erected the value of this new building was simply added to the valuation as it stood before the new building was erected; and, as will be seen, this was held to be a mistake occurring in an original and primary act, and was therefore fundamental and not clerical, and was not an error for which the county commissioners might make an allowance for the excessive taxation.

In *Ohio, etc.,* v. *Brewster,* 11. W. L. B., 38-41, it was held· that where facts did not appear upon the face of the return, but must be determined by the auditor by investigation, this section of the statute did not apply.

There are many other decisions to the same effect, and it seems that the principle to be deduced from these decisions is, that if the direct object of the inquiry before the commissioners is to determine the *existence,* kind and value of certain property, any

error therein would be fundamental (*Mitchell* v. *County Commissioners*, 22 W. L. B., 293). It seems to be well settled by the adjudicated cases that the errors which the auditor may correct by virtue of Section 2588 are errors of bookkeeping or of copying, and that the statute does not afford a remedy or permit a refunder in cases where the errors are fundamental in character.

In *The Barney & Smith Mfg. Co.* v. *County Commissioners*, 29 W. L. B., 266, it was held that "the errors which it is contemplated by this section the auditor may discover and correct, are such as may be detected by an inspection of the books and papers in his possession or under his control, and are merely clerical errors."

The statute does not apply to errors of law, but to bookkeeping. *Brooks* v. *Lander*, 13 O. D. (N. P.), 634-639.

In the case of *Ives* v. *Commissioners*, 10 Am. L. R., 306, it was held that where the city appropriated land and the taxes were afterward charged against the land so appropriated, in the name of the owner of the land before appropriation, that the error was fundamental and not clerical. We think this is a case practically in point. So also it has been held that erroneous valuation is fundamental and not clerical. 21 W. L. B., 317.

Sections 2781 and 2782, Revised Statutes, provide that the county auditor has power to correct false returns made by persons in listing property for taxation, and to add a penalty therefor. If in correcting such false returns he makes an error of judgment in his additions, and taxes are paid thereon, no refunder can be had under or by virtue of Section 2588, General Code (11 W. L. B., 39), and for the reason that such mistake of judgment is not a clerical error—a mistake in writing or the erroneous writing of one thing for another. Such error of judgment would be a mistake or an error in action. The errors contemplated by this section (2588, G. C.) relate to inaccuracies due to oversight or accident, or to discrepancies between what is thought to be true and what really is true, that is, something different from what was intended. A mistake differs from a clerical error in this, that a mistake is an erroneous act or omission arising from ignorance or confusion; or, as Pomeroy de-

fines it, a mistake in law is an erroneous conception that influences the will and leads to action. We think it elementary that if a mistake is due or owing to the neglect of a legal duty, such neglect of a legal duty deprives the error of the character of a mistake, in the legal sense. Therefore, keeping or placing the land sold to Christ on the tax duplicate was not a clerical error, and no refunder should be allowed for taxes or assessments paid after the certificate of purchase was given to Christ.

This holding may seem to work a hardship, but it must be remembered that persons purchasing lands at delinquent tax sales do so, in large measure, at their peril. Such purchases have in them many elements of chance, which are taken by such purchasers because of the large penalties assessed against the owner, for the benefit of the purchaser, when the owner seeks to redeem the lands. Besides, it may be said that the purchaser of lands at a delinquent tax sale has the same means of ascertaining everything relating to lands, the title thereto, the listing thereof, and the taxes and assessments levied thereon, that the auditor and treasurer has, and he ought not to be heard to complain if he purchases blindly and without investigation. As a general rule, when a man pays taxes, the law regards the payment as voluntary, and no recovery can be had of the taxes so paid, unless by express statutory provision. Any other rule would cause chaotic confusion in determining the amount of revenue required and in the collection and distribution of taxes and assessments from year to year.

From the agreed statement of facts upon which this case was submitted, it does not appear that when the appropriation of the land owned by Mr. Harms, for the purpose of widening St. Clair street, was made by the city, the auditor had any knowledge of that fact. The statutes in this state nowhere provide, so far as we are able to ascertain, that it shall be the duty of a municipality to notify the auditor of the county when it appropriates land for street purposes, or to furnish him with a description of the land appropriated.

From inquiry made by the court at the auditor's office, it seems that the practice in this county is for the city clerk to send

to the auditor a copy of all ordinances providing for the appropriation of land for municipal purposes; but these copies of ordinances so furnished the auditor are not even certified by the municipality as being correct.   If this be true, it is difficult to understand how the county auditor, in listing lands for taxation, can determine from the books and records in his office whether any of the lands in the county have been appropriated for municipal purposes; and it is therefore quite evident that the original error in this case, occurring in 1874, was a fundamental error and not a clerical error.

Evidently the attention of the auditor, however, was called to the mistake in December, 1883, by Hill, who then owned or held the certificate of purchase given Kelly, and the money paid therefor was refunded to Hill.   It appears that the auditor at the time, upon the discovery of this mistake, made an entry on the tax records of his office on the same lines where said tax sales are recorded, to the effect that it was a double entry, and the money was refunded December, 1883.   The auditor at this time had knowledge of the mistake, and it was his plain duty to take this parcel of land from the tax duplicate; this he failed to do.   Can it be said that this negligent omission to perform a plain duty was such an error as is contemplated by Section 2588, General Code?   We think not.   Instead of an error, it was gross and negligent failure of duty, for which the auditor, as a ministerial official, might be held liable.   The errors mentioned in this section of the statutes are errors in the description of lands, errors in the amount of taxes or assessment assessed, or errors in the names of the party charged with taxes.   The negligent omission or failure of the auditor to take this parcel of land from the tax duplicate evidently does not fall within this provision of the statute.   The other provision of the statute relating to property exempt from taxation is especially provided for and was inserted in the statute, as we have seen, because of the decision in the 31 O. S., 273, already referred to.

We therefore hold that the county commissioners had no authority, under Section 2588, to make any allowance to the executors of Christ for any taxes paid by Christ, after he obtained

a tax title to this property or after he received his certificate of purchase; but inasmuch as the county commissioners made an allowance for the five years preceding and including the last year for which taxes were paid, and counsel for the county do not ask·that this allowance be revoked, it will not be disturbed.

Section 2590, General Code, provides that ''no taxes or assessment shall be so refunded except such as have been erroneously charged in the five years next prior to the discovery thereof by the auditor.''

Where a city had appropriated land by condemnation proceedings, and the owner continued to pay taxes on the same, he not having notified the auditor to take such lands off the tax duplicate, such payment of taxes is not an error on the part of the auditor, but is due to his own failure in not having the correction made, and no refunder of taxes will be allowed. *Ives* v. *Commissioners, supra.*

It appears from the records in this case that Christ paid taxes upon land, which the county treasurer had no right to sell, for twenty-three years; and further, that he received a tax title deed. The law provides that the holder of a certificate of purchase may surrender the same two years after receiving it, and, receive from the auditor a tax title deed. Before this deed is furnished, however, it is the· duty of the county surveyor to furnish the auditor·or the purchaser with a description of the land named in the certificate of purchase. If the surveyor had performed his duty in the premises, and actually surveyed the land in question, the mistake would have been discovered. If he failed to do this, and made a description for Christ from the description in the certificate of purchase itself, this would have been such negligence on his part as might have made him liable personally to Christ. In any event, it is difficult to conceive how Christ could have continued to pay taxes on another man's land for twenty-three years without being guilty of gross laches, which would, we believe, estop him from making any claim during his lifetime; and if he could not legally assert claim for a refunder during his lifetime, surely his executors will not be heard to do so.

If the plaintiffs were entitled to recover at all, they could only recover for such taxes or assessments as have been erroneously charged and collected for the five years preceding the discovery of the error (*Barney, etc., Mfg. Co.* v. *Commissioners*, 29 W. L. B.; *Hagerty* v. *State*, 14 O. C. C., 95). But, as we have seen, the plaintiffs can only recover if the error is clerical merely; and are not entitled to recover if the error was fundamental, as already indicated. We believe from the facts in this case that if there was error, it was fundamental; but, as a matter of fact, we hold that the failure of the auditor to take this land from the tax duplicate in December, 1883, was a negligent mistake, occurring in the original and primary act of the auditor, and can in no sense be said to be clerical.

For the reasons indicated, the allowance or decision of the county commissioners will be affirmed and the appeal dismissed.